IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BUFFORD WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-1000-HE |
| | ) |
| OKLAHOMA COUNTY | ) |
| COMMISSIONERS, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Bufford Wilson, an Oklahoma prisoner appearing pro se and in forma pauperis, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. *See* Complaint [Doc. No. 1]. The matter has been referred by Chief United States District Judge Joe Heaton for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C).

Before the Court are three motions to dismiss. Defendant P. D. Taylor, identified as the current Sheriff of Oklahoma County and sued in his official capacity, along with Defendant Oklahoma County Commissioners,[1] have moved to dismiss the official capacity claims against Defendant Taylor as well as the claims against Oklahoma County through its Board of County Commissioners. [Doc. No. 21]. The undersigned recommends this motion be granted.

Defendants Willa Johnson and Brian Maughan, identified as two of the individual County Commissioners for Oklahoma County, have moved for dismissal of all claims against them. [Doc. No. 23]. The undersigned recommends this motion to dismiss, too, be granted.

---

[1] By naming "Oklahoma County Commissioners," as a defendant, Plaintiff appears to be attempting to sue Oklahoma County through the Board of County Commissioners of Oklahoma County.

Finally, Defendants Taylor and John Whetsel, the former Sheriff of Oklahoma County, have moved to dismiss the individual capacity claims lodged against them. [Doc. No. 24]. It is recommended that this motion be granted in part and denied in part.

I.     **Procedural Background and Claims Presented**

When Plaintiff filed his Complaint, he was a pretrial detainee in the custody of Oklahoma County, detained in the Oklahoma County Detention Center (OCDC). Plaintiff was awaiting trial on charges in Case Nos. CF-2015-7707 (Oklahoma County District Court) and CF-2015-7890 (Oklahoma County District Court). The court takes notice of the docket sheets for these cases which may be accessed at www.oscn.net. The docket sheets demonstrate Plaintiff was convicted in both cases on January 22, 2018. Additionally, the Oklahoma Department of Corrections website, of which the undersigned takes notice, demonstrates Plaintiff is currently incarcerated at the Lexington Assessment and Reception Center in Lexington, Oklahoma. *See* https://okoffender.doc.ok.gov (last accessed March 14, 2018).

Plaintiff contends his constitutional rights were violated in that he, and other inmates,[2] were exposed to "black mold" allegedly growing in OCDC. Compl. at 6, 9-11. Additionally, Plaintiff claims he and other inmates had no hot water in their cell showers for more than 100 days, allegedly beginning May 18, 2017. *Id.* at 7, 12-13. Plaintiff alleges the lights in his cell were broken from April 11, 2017, presumably at least until the date he filed this action on September 15, 2017. *Id.* at 13-16. Finally, Plaintiff complains that overcrowding at OCDC forces some inmates to be incarcerated three to a cell designed for two. *Id.* at 16-19.

---

[2] Although Plaintiff references "other inmates," he has neither identified the other inmates, nor has he moved for class certification, which would, in any case, be denied, as Plaintiff is not a suitable class representative, the more so because he has been transferred to another facility. As discussed in further detail *infra* at 7-9, Defendants' jurisdictional arguments are specious.

He seeks monetary damages and injunctive relief.[3]

## II. Analysis

### A. Motion to Dismiss of Oklahoma County and Defendant Taylor in his Official Capacity [Doc. No. 21]

Plaintiff has failed to state a plausible claim for relief against Defendant Taylor in his official capacity as Sheriff of Oklahoma County. As discussed in further detail below, it follows that Plaintiff has failed to state a claim against Oklahoma County through its Board of Commissioners for Oklahoma County.

#### 1. Standard of Review for Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to

---

[3] Because Plaintiff is no longer incarcerated at OCDC, his claims for injunctive relief are moot, as the Court is unable to grant him any meaningful relief. *See Jordan v. Sosa,* 654 F.3d 1012, 1024 (10th Cir. 2011) ("Mootness decisions are concerned in large part with the determination whether any effective purpose can still be served by a specific remedy." Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* (*quoting O'Shea v. Littleton*, 414 U.S. 488, 499 (1974).

3

assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

A pro se plaintiff's complaint must be broadly construed under the Rule 12(b)(6) standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

### 2. Dismissal of Official Capacity Claims

Defendant Taylor seeks dismissal of the official capacity claims against him on the grounds that Plaintiff has failed to plead or prove an official policy, custom or practice of Oklahoma County caused the alleged unconstitutional conditions of his confinement. Def.s' Br., [Doc. No. 21] at 25-27. Defendants contend that the claims against Oklahoma County, through its Board of County Commissioners must be dismissed for the same reason. The undersigned agrees.

As Defendants note, these two claims are redundant. Both must be treated as claims against Oklahoma County because under Oklahoma law, a county's board of county commissioners is not a separate legal entity from the county. Rather, the board exercises the powers of the county. *See* Okla. Stat. tit. 19, § 3. Oklahoma law requires a suit against a county to be brought against its board of county commissioners. *Id.* at § 4. Moreover, in the § 1983 context, a suit against the board of county commissioners or some other county official in his or her official capacity is, in substance, a suit against the county. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2008); *Lopez v. LeMaster*, 172 F.3d at 762; *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (a suit against a sheriff in his official capacity as sheriff is the equivalent of a suit against the county). In such cases, courts must apply the law applicable to the liability of municipalities and counties in assessing whether a plaintiff's official capacity claim against a county sheriff survives the motion to dismiss. *See Graham*, 473 U.S. at 165-66; *see also Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (noting that although *Iqbal* clarified the standards for assessing supervisory liability, "[n]othing in *Iqbal* contradicts the standards for municipal liability under § 1983"). A municipality or county can be held accountable to a pretrial detainee for a constitutional violation resulting from an employee's acts only if the harmful acts resulted from a policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights. *See Monell*, 436 U.S. at 690-91, 694.

Plaintiff fails to allege Oklahoma County, through its Board of County Commissioners, had a policy, custom, or practice that led to the allegedly unconstitutional conditions of confinement at OCDC of which Plaintiff complains. Accordingly, Plaintiff has failed to sufficiently state a valid § 1983 claim against Defendant Taylor in his official capacity or against Oklahoma County through its board of county commissioners. The Court, therefore, should grant Defendants' Motion to Dismiss [Doc. No. 21] without prejudice.

  **B.**  **Motion to Dismiss Filed by Defendants Johnson and Maughan [Doc. No. 23]**

Defendants Johnson and Maughan are identified as two of the individual members of the Board of County Commissioners for Oklahoma County. They are sued in both their individual and official capacities. Compl. at 4. The official capacity claims lodged against these Defendants amount to nothing more than claims against Oklahoma County through its Board of County Commissioners. As discussed above, these claims must be dismissed because Plaintiff has failed

to plead or prove the existence of an official policy or custom responsible for the alleged constitutional violations.

As to the individual capacity claims against these members of the Board of County Commissioners for Oklahoma County, Plaintiff has alleged no facts demonstrating their personal participation in the alleged constitutional violations. These claims, too, are subject to dismissal.

As to the individual capacity claims, the standard under which this Court reviews these Defendants' motion to dismiss is set forth *supra* at 3-4. Defendants contend Plaintiff has failed to allege their personal participation in the alleged violation of his constitutional rights and therefore, any individual capacity claims against them must fail. It is fundamental that personal participation is an essential element of a § 1983 claim seeking damages from a defendant in his or her individual capacity. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (quotation omitted); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). To establish personal participation, a plaintiff must allege facts demonstrating an affirmative link between the constitutional deprivation and the defendant's personal participation, exercise of control or direction, or failure to supervise. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).

Plaintiff's Complaint contains no allegations that these individual County Commissioners personally participated in the alleged unconstitutional conduct which forms the basis of Plaintiff's claims. Even supervisory status, without more, is insufficient to establish § 1983 liability. *See Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Of course, there is no suggestion in Plaintiff's Complaint that Defendants Johnson or Maughan had supervisory duties at OCDC.

Accordingly, the Motion to Dismiss [Doc. No. 23] filed on behalf of Defendants Johnson and Maughan, should be granted and the claims against them dismissed without prejudice.

### C. Motion to Dismiss Individual Capacity Claims against Defendants Whetsel and Taylor [Doc. No. 24]

Defendants Whetsel and Taylor move to dismiss the individual capacity claims against them, citing both Fed. R. Civ. P. 12(b)(1) for alleged lack of jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Because this Court does have jurisdiction over this action, and because Plaintiff has stated a plausible claim as to one of his allegations, the Motion to Dismiss should be granted in part and denied in part.

#### 1. Jurisdiction

Defendants contend this Court lacks jurisdiction over this case, arguing that Plaintiff lacks "standing" to bring his civil rights claims based on the conditions of his confinement because he mentions in his Complaint that other inmates are exposed to the same conditions. While Defendants' motion is couched in terms of a challenge to subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), Defendants' argument, in reality, is premised on the notion that Plaintiff has failed to state a claim upon which relief may be granted because of various alleged defects in the Complaint, including a failure "to allege anything more than speculative injury." Defs.' Br. at 14.

Federal courts have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits of the complaint, because the standards governing the two rules differ markedly. Rule 12(b)(6) provides greater procedural safeguards for plaintiffs than Rule 12(b)(1). *See Davis v. Wells Fargo*, 824 F.3d 333, 348-49 (3d Cir. 2016).

First, proceeding under Rule 12(b)(1) inverts the burden of persuasion; when presenting a Rule 12(b)(6) motion, the defendant bears the burden of showing that the plaintiff has not stated a claim. *Id.* But under Rule 12(b)(1), the plaintiff must prove the Court has subject matter

jurisdiction. *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) ("If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence.") (citation omitted); *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1223 (D. Kan. 2016) ("Plaintiff bears the burden to establish that jurisdiction is proper and thus bears the burden to show why the Court should not dismiss the case for lack of subject matter jurisdiction.") (citations omitted).

Second, the two rules treat the complaint's factual allegations very differently. Unlike Rule 12(b)(6), under which a defendant cannot contest the plaintiff's well-pled factual allegations, Rule 12(b)(1) allows a defendant to attack the allegations in the complaint and submit contrary evidence in its effort to show that the court lacks jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). "Thus, improper consideration of a merits question under Rule 12(b)(1) significantly raises both the factual and legal burden on the plaintiff. Given the differences between the two rules, 'a plaintiff may be prejudiced if what is, in essence, a Rule 12(b)(6) challenge to the complaint is treated as a Rule 12(b)(1) motion.'" *Davis*, 824 F.3d at 349 (citation and paraphrasing omitted). "Rule 12(b)(6)—with its attendant procedural and substantive protections for plaintiffs—is the proper vehicle for the early testing of a plaintiff's claims." *Id.*

In describing the challenged conditions of his confinement, Plaintiff makes general references to "all similarly situated inmates." *See e.g.* Compl. at 11. Defendants have seized upon these references in an attempt to convince this Court to grant its Rule 12(b)(1) motion based on their contention that Plaintiff lacks standing "to seek redress for a violation of the rights of others." Defs.' Br. at 11. As noted *supra* at p. 2, n. 2, Plaintiff has not named the other inmates, nor has he sought class certification. Defendants' jurisdictional argument must fail because Plaintiff states that he, too, has been subjected to the alleged unconstitutional conditions of confinement.

Moreover, accepting the allegations in the Complaint as true, Plaintiff has asserted he, personally, has suffered injury because of the alleged unconstitutional conditions of confinement. With that said, the Court recommends denial of Defendant's motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1).

### 2. Failure to State a Claim upon which Relief may be Granted

This Court's standard of review of a motion brought pursuant to Rule 12(b)(6) is discussed *supra* at 3-4. A plaintiff must plead sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' *Iqbal*, 556 U.S. at 678.

#### a. Constitutional Rights of Pretrial Detainees

The constitutional right of a pretrial detainee to be free from cruel and unusual punishment is protected under the Due Process Clause of the Fourteenth Amendment. *See Lopez v. LeMaster*, 172 F.3d at 759. Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, *see Bell v. Wolfish*, 441 U.S. 520, 535 (1979), the Eighth Amendment standard provides the benchmark for such claims. *See McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996). The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component. *See id.*

The objective component requires that the alleged deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Although what constitutes cruel and unusual

punishment under the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society," *Rhodes v. Chapman*, 452 U.S. 337, 346, (1981) (*quoting Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)), the Constitution "does not mandate comfortable prisons," *id.* at 349. To the contrary, jail conditions may be "'restrictive and even harsh'" without violating constitutional rights. *Barney*, 143 F.3d at 1311 (*quoting Rhodes*, 452 U.S. at 347). Indeed, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted); *accord Farmer v. Brennan*, 511 U.S. 825, 834, (1994). This inquiry turns not only on the severity of the alleged deprivations, but also on their duration. *See Barney*, 143 F.3d at 1311 ("An important factor in determining whether the conditions of confinement meet constitutional standards is the length of the incarceration."). Additionally, when, as in this case, a claim involves more than one alleged inhumane condition, the Court must bear in mind that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise."[4] *Wilson*, 501 U.S. at 304. However, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

The subjective component requires the jail official to have a "sufficiently culpable state of mind." *Id.* at 297. In the context of prison-conditions claims, the required state of mind is one of "'deliberate indifference' to inmate health and safety." *Farmer*, 511 U.S. at 834 (*quoting Wilson*, 501 U.S. at 302–03). In other words, the jailer is liable only if he or she "knows of and disregards

---

[4] In this case, the conditions of confinement Plaintiff challenges are unrelated to each other and do not have a "mutually enforcing effect" on a single identifiable human need.

10

an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "It is not enough to establish that the official should have known of the risk of harm." *Barney*, 143 F.3d at 1310.

### b. Analysis of Claims

#### 1. Exposure to Black Mold

Plaintiff contends he was subjected to "prolonged exposure" to "toxic black mold" while incarcerated at OCDC. Plaintiff contends exposure to "toxic black mold" causes "serious health problems associated with mental impairment, breathing problems, damage to internal organs, and sometimes death." Compl. at 10. He further contends that "mycotoxins" from the mold can be breathed into a person's body or enter through the skin. *Id.* Plaintiff does not allege that he has suffered any injury caused by exposure to black mold. But the Eighth Amendment also protects prisoners from conditions that pose an unreasonable risk of damage to an inmate's future health, such as exposure to environmental toxins. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (establishing a two-prong test to determine whether exposure to second-hand or environmental tobacco smoke violates a prisoner's Eighth Amendment rights). To prevail, a prisoner must demonstrate that he has been exposed to "unreasonably high levels" of toxins and that prison authorities demonstrated a "deliberate indifference" to the prisoner's plight. *Id.*

Defendants do not contend that they were unaware of mold in OCDC. Moreover, Defendants again seek dismissal based on their specious argument that Plaintiff has raised his claims on behalf of other inmates. Defs.' Br., [Doc. 24], at 18 ("fatal to Plaintiff's claim is that a Section 1983 action exists to vindicate personal rights; plaintiff may not seek redress for the

11

violation of the rights of others."). Contrary to Defendants' contention, Plaintiff has also pled that he, too, has been exposed to the possible hazards of mold. Compl. *passim.*

On the other hand, courts have found the presence of mold, by itself, is insufficient to constitute the type of substantial risk of serious harm that would give rise to an Eighth Amendment claim. *See Cox v. Grady Cty. Det. Ctr.*, No. CIV-07-875-M, 2008 WL 1925052, at *3 (W.D. Okla. Apr. 29, 2008) (finding that "mold in the showers does not create a reasonable inference regarding the sort of threat to ... mental or physical well-being which is necessary for violation of the Eighth Amendment"); *Sutherland v. Richardson*, No. CIV-05-1199-T, R. & R. at 8 (W.D. Okla. Nov. 21, 2005), adopted, 2005 WL 3556104 (W.D. Okla. Dec. 28, 2005); *see also Shrader v. White*, 761 F.2d 975, 983-84 (4th Cir. 1985) (holding that leaking ceilings, cold water in cells, dripping shower heads, and rust, mold, and mildew in shower area were not sufficiently serious deprivations to support an Eighth Amendment claim). In this case, however, Plaintiff has stated a plausible claim of a risk to Plaintiff's future health. *See Iqbal* at Therefore, dismissal of this claim should be denied.

### 2. Deprivation of Hot Water

Plaintiff fails to allege facts that plausibly show that the deprivation of hot water was "sufficiently serious" to support an Eighth Amendment claim. *See DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) ("In order to satisfy [the objective] prong of the *Farmer* test, a prisoner must show that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm' to inmate health or safety." (*quoting Farmer*, 511 U.S. at 834)). The federal courts of appeals generally have found that the denial of hot water does not constitute a sufficiently serious deprivation of life's basic necessities such as would support an Eighth Amendment claim. *See, e.g., Smith v. Romer*, No. 96-1211, 1997 WL 57093, at

12

*2 (10th Cir. Feb. 11, 1997) (holding that a claim based on "the need for hotter water" did not "satisfy the objective prong of the Eighth Amendment test"); *Mann v. Smith*, 796 F.2d 79, 85-86 (5th Cir. 1986) (noting that "[t]he district court correctly assumed that there is no constitutional right to hot water"); *Hopkins v. Klindworth*, 556 Fed. App'x. 497, 499 (7th Cir. 2014) (finding the district court properly dismissed the Plaintiff's claims regarding the deprivation of hot water because "[p]risoners do not have a constitutional right to hot water under the Eighth Amendment"); *Ellis v. Pierce Cty.*, 415 Fed. App'x. 215, 218 (11th Cir. 2011) (holding that the denial of hot water for a pretrial detainee was not a sufficiently extreme deprivation to establish an unconstitutional condition of confinement); *Lopez v. Robinson*, 914 F.2d at 486, 492 (4th Cir. 1990) ("[T]here is no clearly established, sufficiently contoured, right to hot showers in prison."). Moreover, Plaintiff's vague contention of pain and suffering fails to plausibly link any physical effects to the lack of hot water and does not "reflect a deprivation of life's basic necessities." Consistent with these authorities, Plaintiff's allegation of denial of hot water is insufficient to establish the objective prong of the Eighth Amendment standard. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

Even if Plaintiff's allegations satisfied the objective component of a claim for deliberate indifference to safety, Plaintiff fails to establish the subjective component of the claim. To satisfy the deliberate-indifference standard, Plaintiff must show that Defendants' conduct "disregard[ed] a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry v. City of Muskogee*, 900 F.2d 1489, 1496 (10th Cir. 1990). This standard requires actual or assumed knowledge of a *risk*, not mere knowledge of the conduct giving rise to the risk. *See Verdecia v. Adams*, 327 F.3d 1171, 1176 (10th Cir. 2003). While Plaintiff contends that

Defendant Taylor[5] was aware of—indeed, intentionally caused—the lack of hot water in cells or showers, Plaintiff does not allege facts that would plausibly support an inference that Defendant Taylor "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Womble v. Harvanek*, ___ Fed. App'x. ___, 2017 WL 6333936, at *2 (10th Cir. Dec. 12, 2017) (internal quotation marks omitted).

Because Plaintiff fails to meet either component of the two-pronged standard, Plaintiff's claim regarding lack of hot water should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 3. Broken Cell Lights

Plaintiff contends his cell lights quit functioning on April 11, 2017. Plaintiff states many of the cells lost lights that day. Compl. at 14. According to Plaintiff, the only light that entered the cells was sunlight shining through thick glass blocks. *Id.* at 15. Plaintiff's claim regarding lack of lighting does not state a claim of constitutional dimensions

The Tenth Circuit has held that a situation involving filthy cells, poor lighting, inadequate ventilation or air cooling, and unappetizing food "simply [did] not rise to the level of a constitutional violation" where prisoners were exposed to the conditions for only a short duration. Minor deprivations suffered for short periods do not rise to an Eighth Amendment violation; only substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a short duration. *See DeSpain* 264 F.3d at 973 (citations and internal quotation marks omitted); *accord Mitchell v. Maynard*, 80 F.3d 1433, 1442-43 (10th Cir. 1996) (stating that "[i]t is important to consider the conditions of confinement as a whole"). Here, it is unclear how long Plaintiff was housed in a cell with dim lighting.

---

[5] This claim is lodged against Defendant Taylor alone.

Holding a prisoner in a dark cell day and night, if accompanied by other deprivations, could violate both due process and the Eighth Amendment. *See Sweet v. S.C. Dep't of Corr.*, 529 F.2d 854, 861 (4th Cir. 1975) ("To condemn inmates in solitary confinement to what has been described as 'strip cells,' which are generally 'small dark closets,' and to deprive them of 'human companionship, sanitary needs and clothing, feed them on starvation diets, force them to sleep on their mattresses' would violate both due process and Eighth Amendment rights"). In this case, however, Plaintiff has not pled other mutually enforcing effects of other conditions of confinement. The only injury Plaintiff notes is the necessity of straining his eyes to read or write. Plaintiff's allegations regarding the lighting in his cell do not state a plausible claim for relief.

Plaintiff has also failed to allege that Defendants possessed the requisite state of mind to satisfy the subjective component of a claim based on deliberate indifference. The subjective component of the test is satisfied only if the "[prison] official knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. Plaintiff has stated no facts which would demonstrate that Defendants Whetsel or Taylor knew of excessive risks to Plaintiff's health and safety caused by broken cell lights.

### 4. **Overcrowding**

Plaintiff contends OCDC's practice of occasionally assigning three prisoners to cells designed for two is unconstitutional. Plaintiff contends putting three prisoners in a cell makes it difficult to move around and makes for a tense environment that could lead to violence. As discussed *supra* at 10, the Constitution does not mandate comfortable prisons. And Plaintiff has again failed to demonstrate that triple celling constitutes a serious threat to health or safety. The discomfort Plaintiff describes does not rise to the level of a due process violation. Plaintiff has not stated a plausible claim for relief based on overcrowding. *See Ellis v. Mohr*, No. 1:13 CV 1058,

2017 WL 4155769, at *9 (N.D. Ohio Sept. 19, 2017) (constitution does not mandate comfortable prisons and for a prison overcrowding claim, a prisoner must allege "extreme deprivations" in order to trigger the Eighth Amendment).

## RECOMMENDATION

It is recommended that the Motion to Dismiss filed by Oklahoma County and Defendant Taylor in his official capacity [Doc. No. 21] be granted, and those claims dismissed without prejudice. It is further recommended that the Motion to Dismiss filed by Defendants Johnson and Maughan [Doc. No. 23] be granted and the claims against them be dismissed without prejudice. Finally, it is recommended that the Motion to Dismiss filed by Defendants Whetsel and Taylor in their individual capacities [Doc. No. 24] be granted in part and denied in part. The claims regarding lack of hot water, lack of lighting, and overcrowding should be dismissed without prejudice for failure to state a claim upon which relief may be granted. As to the claim regarding Plaintiff's exposure to mold, the motion to dismiss should be denied, as Plaintiff has stated a plausible claim for relied

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by April 4, 2018. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the Chief District Judge in this matter.

ENTERED this 14th day of March, 2018.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE